UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT WEBSTER, et al.,

    Plaintiffs,

v.

STATE OF NEW JERSEY, et al.,

    Defendants.

Civ. No. 15-1525 (RBK) (JS)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Robert Webster, is a former prisoner that was incarcerated in the New Jersey State Correctional System. Plaintiff, through counsel, filed a second amended complaint asserting civil rights claims pursuant to 42 U.S.C. § 1983. Plaintiff also alleges violations of the Americans with Disabilities Act ("ADA") and the New Jersey Law against Discrimination ("NJLAD"). Presently pending before the Court are two motions for summary judgment, one filed by the State of New Jersey and the New Jersey Department of Corrections (collectively the "State Defendants") (ECF No. 91), and the other filed by Rutgers University and William Briglia, D.O. (collectively the "Medical Defendants") (ECF No. 94). Both the State and Medical Defendants have also moved to seal certain exhibits submitted with their motion papers. (ECF Nos. 92, 95, & 110). Plaintiff opposes both motions for summary judgment, but not the motions to seal. For the following reasons, both the State and Medical Defendants' motions for summary judgment are denied. Additionally, the State and Medical Defendants' motions to seal are granted.

## II. BACKGROUND

### A. Factual Background

As noted in this Court's previous opinion, this case centers around Plaintiff's allegations that during his incarceration he suffered a sudden yet persistent bilateral arm paralysis that went untreated for the entirety of his confinement. Upon being released from prison in July 2012, Plaintiff was diagnosed with amyotrophic lateral sclerosis ("ALS"), which he contends was exacerbated by the Defendants' failure to treat his condition. Plaintiff also alleges that he was denied adequate living accommodations, harassed, and ridiculed on account of his paralysis.

Plaintiff alleges that on February 8, 2011, while incarcerated at Bayside State Prison, he presented to the prison physician with a sudden onset of paralysis in both arms. (*See* ECF No. 46 at ¶ 25). Available medical records indicate that Plaintiff complained of shoulder pain and experienced a decreased range of motion in his hands in October 2011. (*See* ECF No. 93 at pp. 257-58). Additionally, medical staff observed a decreased range of motion in Plaintiff's shoulders in November 2011. (*See id.* at p. 231). As a result of this observation, a lower bunk restriction was ordered.[1] (*See id.* at pp. 232-33). Plaintiff also complained to medical staff that he was unable to lift his arms above shoulder height on December 29, 2011. (*See id.* at pp. 201-02).

The available medical records show that Plaintiff's medical condition became progressively worse. By April 2, 2012, Dr. Briglia noted chronic arthritic changes and muscle atrophy of Plaintiff's hands and shoulders as well as Plaintiff's inability to lift his hands to shoulder height. (*See id.* at pp. 104-05). Following his evaluation by Dr. Briglia, Plaintiff continued to complain to the prison medical staff of his upper extremity weakness, limited mobility, and the inability to lift his arms above his head. (*See id.* at pp. 48-53, 88-90, 100-02). At a physical

---

[1] A work order restriction was provided to Plaintiff in September 2010 due to arthritis. (ECF No. 93 at pp. 448-49).

therapy appointment on June 21, 2012, Plaintiff complained of muscle weakness, paresthesias, and tremors. (*See id.* at p. 26). The physical therapy records also note that Plaintiff "states he has not been able to move his arms since winter 2010. Weakness has advanced … unable to lift arms up at all." (*See id.*). It was further observed that Plaintiff presented with "severe bilateral [upper extremity] flaccid paralysis and hand contracture" and that he was "unable to move much, very limited function." (*See id.*).

Plaintiff claims that as a result of his arm paralysis, he required assistance to participate in daily living activities such as eating, bathing, dressing, brushing his teeth, and using the restroom. (*See* ECF No. 46 at ¶ 39). Plaintiff testified during his deposition that he requested assistance and accommodations from the Department of Corrections ("DOC") and medical staff on a regular basis. (*See* ECF No. 91, Ex. F at 39:20 to 40:12; ECF No. 100, Ex. D at 110:25 to 111:18). Despite these requests, Plaintiff alleges that the State and Medical Defendants failed to provide him with reasonable accommodations, such as an aide to assist him with daily functions. (*See id.* at ¶¶ 36-37). As a result, Plaintiff contends that he was forced to pay other inmates to help him engage in these daily activities. (*See id.* at ¶ 39).

Plaintiff argues that the State and Medical Defendants were both aware of his disability and need for accommodations as his condition was obvious and apparent to all who observed him. In support of this contention, Plaintiff cites to his medical records and an adjudication of disciplinary charge report dated April 3, 2012, wherein a DOC hearing officer found Plaintiff not guilty of committing the prohibited act of possession or introduction of a weapon because he was unable to physically reach the top locker area where the item was found. (*See* ECF No. 91, Ex. P). Plaintiff also asserts that the medical records do not include all of the oral complaints he made to DOC and medical staff. In support of this contention, Plaintiff points to the testimony of Dr.

Ralph Woodward, Rutgers' designee, wherein Dr. Woodward stated that not all informal communications and complaints generate documentation, thus indicating that the available medical records are not necessarily the entire extent of the communications between the inmate, medical personnel, and prison staff.[2] (*See* ECF No. 102, Ex. L at 97:22 to 98:8). Despite this knowledge, Plaintiff contends that the State and Medical Defendants failed to provide him with any reasonable accommodations to assist him in daily life activities.

### B. Procedural History

Plaintiff filed his initial complaint on February 7, 2013 in the Camden County Superior Court naming the State, the DOC, and numerous fictitious "John Does." (*See* ECF No. 1, Ex. B). On December 1, 2014, Plaintiff filed an amended complaint naming Rutgers (incorrectly plead as University of Medicine and Dentistry of New Jersey) as a defendant and replacing the John Doe defendants with the following individuals: Niranjana Shah, M.D.; Jennifer Stackhouse, RN; Judith Fidler, RN; Victoria D'Amico, RN; Natasha Auguste, RN; Rhonda Kuteyi, RN; Francis Meo, M.D.; Stephanie Smith, RN; Denise Schnee, RN; Sherita Latimore-Collier, M.D.; Roni J. Feldman, APRN; Assistant Warden Lanoza; Sergeant Rojas; Officer Ronald Long; Social Worker Eisinger; Sergeant Joynes; Corrections Officer Battle; Corrections Officer Urgo; and Associate Director Ronald Riggins. (*See* ECF No. 1, Ex. A). Mr. Lanoza was never served with the amended complaint. (*See* ECF No. 91 at p. 2).

On February 27, 2015, the State Defendants removed Plaintiff's amended complaint from the Camden County Superior Court to the District Court of New Jersey. (*See* ECF No. 1). On

---

[2] Plaintiff also claims that the medical records produced in discovery are incomplete as Dr. Woodward further testified that "[t]here appeared to be some documents that were unrecoverable. It appeared that other people had signed them out. So I can't say that the whole of that medical reference file was reviewed, although we made a great attempt to find them." (*See* ECF No. 102 Ex. L at 153:10-14).

4

March 24 and April 20, 2015, the State Defendants and the Medical Defendants, respectively, filed motions to dismiss Plaintiff's amended complaint. (*See* ECF Nos. 3, 8). In an order and opinion dated September 15, 2015, this Court partially granted the Defendants' motions, dismissing Plaintiff's Fourteenth Amendment, NJLAD, and ADA claims without prejudice for failure to state a claim.[3] (*See* ECF Nos. 17, 18).

On December 30, 2015, Plaintiff filed a second amended complaint asserting violations of the First, Eighth, and Fourteenth Amendments brought under 42 U.S.C. § 1983 against the individual defendants (Count I); violations of the New Jersey Constitution against the individual defendants (Count II); violations of the NJLAD against the institutional Defendants, Mr. Lanoza, and Mr. Riggins (Count III); and violations of Title II and Title III of the ADA against the institutional Defendants (Count IV). (*See* ECF No. 46). The parties have consented to the dismissal of all claims against the individual Defendants except for Dr. Briglia and Mr. Lanoza. (*See* ECF Nos. 53, 105, 108, 113).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue

---

[3] Plaintiff's wife, Cynthia Webster, was also named as a plaintiff in the initial state court complaint, alleging a loss of consortium claim. (*See* ECF. No. 1 at Ex. A.). Mrs. Webster's loss of consortium claim was dismissed by this Court for failure to file a tort claims notice. (*See* ECF Nos. 17, 18).

5

of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").

## IV. DISCUSSION

### A. ADA and NJLAD Claims against the State, DOC, and Rutgers

Plaintiff asserts claims against the State Defendants and Rutgers arising under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II, Plaintiff must show that: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819-20 (3d Cir.

6

2015) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007).

Moreover, the NJLAD provides in relevant part that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation ... without discrimination because of ... disability." N.J. Stat. Ann. § 10:5-4. The courts of this district have regularly held that correctional facilities are places of public accommodation within the meaning of the NJLAD. *See, e.g.*, *Anderson v. Cnty. of Salem*, No. 09-4718, 2010 WL 3081070, *11 (D.N.J. Aug. 5, 2010) (collecting cases); *see also Chisolm v. McManimon*, 97 F. Supp. 2d 615, 621-22 (D.N.J. 2000), *rev'd and remanded on other grounds*, 275 F.3d 315 (3d Cir. 2001) (predicting that the New Jersey Supreme Court would find that jails and prisons are "places of public accommodation").

"New Jersey courts generally interpret the LAD by reliance upon [the construction of] analogous federal antidiscrimination statutes." *Chisolm*, 97 F. Supp. 2d at 621. Accordingly, it is appropriate to analyze an NJLAD disability discrimination claim by applying the test employed to analyze claims under the ADA. *See Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 70 (3d Cir. 2006). *See also Brewer v. Hayman*, No. 06-6294, 2009 WL 2139429, *9 (D.N.J. July 10, 2009) (citing *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 502-03 (D.N.J. 2008)). That is, to prevail, a plaintiff must establish that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse action because of that disability." *D.G.*, 559 F. Supp. 2d at 503.

1. **Qualified Individual with a Disability**

A "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary

aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" within the meaning of the ADA is, inter alia, "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). Whether a person is "substantially limit[ed]" must be determined by whether the individual is "[u]nable to perform a major life activity that the average person in the general population can perform," or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 (10th Cir. 2003) (quoting 29 C.F.R. § 1630.2(j)(i)).

The Supreme Court has interpreted "major life activities" as "those activities that are of central importance to daily life," such as "walking, seeing, and hearing." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002); *see also Taylor v. USF-Red Star Exp., Inc.*, 212 Fed. Appx. 101, 106 (3d Cir. 2006) (listing examples of major life activities as "caring for oneself, walking, breathing, seeing, hearing, and working"); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (noting "if [plaintiff's] impairment substantially limited his ability to walk, he suffered a 'disability' for purposes of the ADA").

Here, Defendants do not appear to dispute that Plaintiff was a qualified individual with a disability within the meaning of the ADA.

2. **Discrimination by Reason of Disability**

The ADA authorizes suits by private citizens for money damages against public entities, *Unites States v. Georgia*, 546 U.S. 151, 153 (2006), and Title II of the ADA "unmistakably

8

includes state prisons" as covered public entities.[4] *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209-10 (1998). Further, medical care is "one of the 'services, programs, or activities' covered by the ADA." *Kiman v. N.H. Dep't of Corrs.*, 451 F.3d 274, 284 (1st Cir. 2006). The Supreme Court has held that the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitute[s] exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." *Georgia*, 546 U.S. at 157 (internal quotations and alterations omitted); *see also Yeskey*, 524 U.S. at 210 (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

However, "[t]he treatment (or lack thereof) of a prisoner's medical condition typically does not provide a basis upon which to impose liability under the ADA." *McClintic v. Pa. Dep't of Corr.*, No. 12-6642, 2013 WL 5988956, *11 (E.D. Pa. Nov. 12, 2013); *see also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (noting that denial of medical treatment for disabilities "is not encompassed by the ADA's prohibitions"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (concluding that a lawsuit under the ADA "cannot be based on medical treatment decisions"); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions do not ordinarily fall within the scope of the ADA); *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("He is complaining about

---

[4] Defendants do not contest that South Woods State Prison is a public entity.

incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.").

A plaintiff claiming discrimination on the basis that a public entity failed to provide a particular reasonable accommodation needs to show that the public entity had knowledge that the individual required accommodation. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007) ("[B]efore a public entity can be required under the ADA to provide an auxiliary aid ..., the entity must have knowledge that the individual is disabled, either because that disability is obvious or because the individual (or someone else) has informed the entity of the disability."). However, "[w]hen a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Chisolm v McManimon*, 275 F.3d 315, 330 (3d Cir. 2001).

In their motion for summary judgment, the State Defendants argue that they should be entitled to summary judgment on Plaintiff's ADA and NJLAD claims as Plaintiff did not put the State Defendants on notice of his disability by filing any written requests for accommodations. (*See* ECF No. 91 at pp. 42-43). The State Defendants also contend that the record shows that Plaintiff was provided with ample medical care and accommodations including a medical work restriction and a lower bunk restriction.[5] (*See id.* at p. 44).

---

[5] The State Defendants argue, for the first time on reply, that they are also entitled to Eleventh Amendment immunity on Plaintiff's ADA and NJLAD claims. (ECF No. 109 at pp.10-11). The Court declines at this time to entertain the State Defendants' untimely argument. *See Bernstein v. Atl. City*, No. 08-3796, 2011 WL 2559369, *3 (D.N.J. June 27, 2011) ("Arguments raised for the first time in reply briefs should not be considered by courts because the Local Rules of Civil Procedure prohibit, without leave of court, sur-replies. Consequently, the party opposing summary judgment has no opportunity to respond to any newly raised arguments contained within the brief."); *YSM Realty, Inc. v. Grossbard*, No. 10-5987, 2011 WL 735717, *3 n.3 (D.N.J. Feb. 23, 2011) ("The Court will not entertain arguments not raised in Defendants' initial brief"); *Halprin v. Verizon Wireless Serv., LLC*, No. 07-4015, 2008 WL 961239, *8 (D.N.J. April 8, 2008) (A reply brief's purpose, as evidenced by its name, "reply brief," is to "respond[ ] to the opposition brief and explain[ ] a position that the respondent has refuted.").

Rutgers argues in its motion for summary judgment that Plaintiff's claims are improperly brought under the ADA and NJLAD as Plaintiff's claims are actually based on allegations of medical negligence relating to the failure to appropriately treat his symptomology. (*See* ECF No. 94 at p. 19). Rutgers contends that because the ADA does not provide a cause of action for discrimination based on medical decisions, it is entitled to summary judgment. (*See id.*). Additionally, Rutgers argues that Plaintiff was provided every accommodation he requested and was never refused any requested accommodation because of his disability. (*See id.*). Moreover, Rutgers argues that there is no evidence that any of Plaintiff's medical providers were actually aware that Plaintiff was disabled from participating in some activity and required an accommodation (other than his work and bunk order). (*See id.* at p. 20).

Plaintiff contends that the record demonstrates that the State Defendants and Rutgers had knowledge of his inability to use his arms and hands and his resultant need for assistance and accommodations. (ECF No. 100 at pp. 3-6, 14-18, 22-24). Despite this knowledge, Plaintiff asserts that the Defendants deliberately failed to provide him with necessary accommodations to enable him to participate in daily living activities including eating, dressing, bathing, and using the toilet. (*Id.* at pp. 7-8, 19-21). Additionally, Plaintiff argues that his ADA and NJLAD claims are not medical malpractice claims as he is not alleging that the Defendants failed to treat and diagnose him, rather the focus of his claims is that the Defendants failed to provide reasonable accommodations for him.[6] (*Id.* at pp. 26-27).

---

[6] In his brief in opposition to Defendants' motions for summary judgment, Plaintiff raises, for the first time, a hostile environment claim under the NJLAD. (ECF No. 100 at pp. 25-26). Since Plaintiff failed to plead this claim in the second amended complaint, the Court will not consider it. *See Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008) (declining to consider plaintiff's breach of contract claim because it was alleged for the first time in plaintiff's opposition to defendant's motion for summary judgment and not alleged in plaintiff's complaint); *Bey v. Daimler Chrysler Servs. of N. Am.*, No. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb.15, 2006) ("claims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition

Viewing the evidence in the light most favorable to Plaintiff, there are unresolved factual questions in this case regarding whether the State Defendants and Rutgers had notice of Plaintiff's disability and need for assistance and whether the Defendants failed to provide Plaintiff with accommodations on the basis of his disability. Accordingly, summary judgment is inappropriate.

There is a question of material fact as to whether the State Defendants and Rutgers were aware of Plaintiff's disability. The record reveals that prison physicians and staff had knowledge of Plaintiff's physical symptoms as it is noted in the available medical records that Plaintiff displayed an inability to lift his arms, very severe functional limitations, muscle atrophy, and severe bilateral arm paralysis. (*See* ECF No. 93 at pp. 26-27, 104-05). The record also indicates that the State Defendants may have known of Plaintiff's physical disability as a DOC hearing officer noted in a disciplinary charge report that Plaintiff was unable to reach a top locker area. (ECF No. 91, Ex. P).

Taking the facts in the light most favorable to Plaintiff, there is also a genuine issue of material fact as to whether Plaintiff informed the State Defendants and Rutgers of his need for accommodations. Plaintiff testified during his deposition that he made oral and written requests to DOC and medical staff for assistance and accommodations, which were denied. (*See* ECF No. 91, Ex. F at 39:20 to 40:12; ECF No. 100, Ex. D at 110:25 to 111:18). Additionally, even if a factfinder concluded that Plaintiff did not make requests for accommodations, it could still find that the Defendants were on notice of Plaintiff's need for accommodations if the need was "obvious" to Defendants. As noted above, there is a genuine issue of fact regarding whether Defendants knew Plaintiff suffered from a physical disability. If Defendants knew that Plaintiff

---

to a motion for summary judgment"); *see also Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

was disabled, there is a question of fact regarding whether his need for an accommodation was obvious when he attempted to participate in daily living activities that required the use of his arms such as eating, bathing, dressing, and using the toilet.

Further, there is a genuine issue of material fact regarding whether the State Defendants and Rutgers failed to provide Plaintiff with reasonable accommodations to engage in daily living activities. While Plaintiff agrees that the Defendants did provide him with a lower bunk order and a work restriction order, he claims that he required additional accommodations such as assistance with eating, dressing, bathing, brushing his teeth, and using the toilet. The effectiveness of the accommodations provided by the Defendants is a question of fact best determined by a jury. *See Chisolm*, 275 F.3d at 327 ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment.").

### B. Section 1983 Claims against Dr. Briglia

Plaintiff also asserts a Section 1983 deliberate indifference claim against Dr. Briglia, Plaintiff's managing physician from April to July 2012. Plaintiff argues that Dr. Briglia subjected Plaintiff to cruel and unusual conditions of confinement as a result of his failure to provide Plaintiff with necessary assistance and accommodations for daily life activities. Dr. Briglia argues that Plaintiff's claims against him are merely medical negligence claims which do not rise to the level of deliberate indifference required to establish a violation of the Eighth Amendment.

To state a claim pursuant to 42 U.S.C. § 1983, Plaintiff must show that Dr. Briglia acted under the color of state law to deprive Plaintiff of a right protected by the United States Constitution. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). The Eighth Amendment proscribes cruel and unusual punishment, and requires that prison officials provide adequate medical care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v.*

*Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To bring a cognizable claim for violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Satisfaction of the first *Estelle* prong requires an inmate to demonstrate that his medical needs are serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious."). The Third Circuit defines a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988)).

In order to qualify for relief under Section 1983, Plaintiff must also satisfy the second prong of the *Estelle* standard and establish that each individual acted with deliberate indifference to his serious medical needs. Deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). Deliberate indifference may be displayed in a myriad of ways, such as where an official "(1) knows of prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed or recommended medical treatments." *Rouse*, 182 F.3d at 197 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)).

The standard applied in reviewing the actions of prison doctors and medical staff is deferential. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment when it is based on sound professional judgment. *See id.* A misdiagnosis or preference for a certain type of treatment will not alone rise to the level of deliberate indifference. *See e.g., Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("[M]ere disagreements over medical judgment do not state Eight Amendment claims."). Moreover, "a court will generally not find deliberate indifference when some level of medical care has been offered to the inmate." *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002) (citing *Clark v. Doe*, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("Courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care.")).

Providing some type of treatment, however, does not automatically preclude liability under the Eighth Amendment. *Id.* at 414. Courts have found constitutional violations where some level of care had been provided, but the care was not based on sound medical judgment, the decision to pursue a course of treatment was based primarily on non-medical reasons, or a medical official denied the requested treatment with the intention of inflicting pain. *See, e.g., Rouse*, 182 F.3d at 197 (citing examples such as leaving Debrox in the ear of one prisoner when there was no legitimate medical reason for doing so or denying Maalox and increasing the risk of peptic ulcer based on inappropriate non-medical considerations); *White*, 897 F.2d at 109 (finding violation where prison physician did not base the course of treatment on sound medical judgment and

"insisted on continuing courses of treatment that [he] knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners").

Here, viewing all evidence in the light most favorable to Plaintiff, an issue of material fact exists as to whether Dr. Briglia was deliberately indifferent to Plaintiff's serious medical need. The available medical records reveal that Dr. Briglia evaluated Plaintiff on April 2, 2012 and noted Plaintiff's severe muscle atrophy and inability to lift both hands to shoulder height. (*See* ECF No. 93 at pp. 104-06). Medical records show that Plaintiff's condition continued to deteriorate as time progressed. (*See id.* at pp. 26-27) (noting severe bilateral paralysis and functional limitations). Despite these observations, Plaintiff contends that Dr. Briglia failed to provide any accommodations or assistance to Plaintiff for completing daily life activities.

Dr. Briglia first argues that Plaintiff did not have a serious medical need as there is no evidence that ALS, as opposed to Plaintiff's preexisting rheumatoid arthritis, was the cause of his upper extremity paralysis. However, Plaintiff's upper extremity paralysis, whether caused by ALS or rheumatoid arthritis, was chronic, debilitating, and deforming. *See Christy*, 216 F. Supp. 2d at 413 (finding that hepatitis C and arthritis are serious medical needs); *Lanzaro*, 834 F.2d at 347 (medical needs may be deemed serious if the denial or delay potentially would result in serious injury, long term harm, or permanent disability); *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988) (condition need not be life threatening in order to be considered serious). Accordingly, construing the facts in the light most favorable to the non-moving party, Plaintiff has sufficiently shown that his upper extremity paralysis is a serious medical need.

Dr. Briglia also argues that he was not deliberately indifferent to Plaintiff's medical needs as medical records demonstrate that he ordered diagnostic testing including radiological imaging and lab work following his initial evaluation of Plaintiff. While Dr. Briglia did order initial testing,

16

the records also indicate that Dr. Briglia did not issue any accommodations or orders for assistance in connection with Plaintiff's completion of daily life activities including the ability to eat, bathe, use the restroom, and maintain personal hygiene. Additionally, the medical records indicate that some of the diagnostic testing ordered by Dr. Briglia, such as MRIs, were never completed. Accordingly, an issue of material fact exists as to whether Dr. Briglia deliberately refused to provide accommodations to Plaintiff for his serious medical need. Therefore, the Medical Defendants' motion for summary judgment as to Plaintiff's Eight Amendment claim is denied.

### C. Motions to Seal

Local Civil Rule 5.3 governs requests to seal documents filed with the Court. Specifically, the Rule requires that any motion seeking to seal or restrict public access to filed materials must include in the motion papers a description of "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2). In addition, where a party moves to seal pretrial motions of a "non-discovery nature" such as a motion for summary judgment, the moving party must make a showing sufficient to overcome a "presumptive right of public access." *Leucadia v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993). The moving party can rebut this presumption by demonstrating that "good cause" exists for the protection of the material the party is seeking to seal. "Good cause exists when a party makes a particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *Securimetrics, Inc. v. Iridian Tech., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

Here, all four factors weigh in favor of sealing Plaintiff's medical records from public access upon the docket. With respect to factor (a), the nature of the materials at issue are Plaintiff's medical records attached as exhibits to the Defendants' motions for summary judgment. Since the materials at issue are medical records, which have long been recognized as confidential by nature, this factor supports Defendants' motions. *See Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) ("We have long recognized the right to privacy in one's medical information...."). Second, with respect to factor (b), the Court finds that there is a legitimate private interest (namely, Plaintiff's privacy rights) in maintaining privacy with respect to such records.

Third, with respect to factor (c), the Court finds that Defendants have sufficiently set forth the risk of harm to the private interests if Plaintiff's medical records are disclosed—namely, Plaintiff's privacy rights will be irreparably harmed. Finally, with respect to factor (d), the Court finds that a less restrictive alternative is not available. Moreover, the Court notes that the documents at issue are not of general interest to public health or safety. Thus, the Court finds that the factors enunciated in Local Civil Rule 5.2(c)(2) weigh in favor of sealing Plaintiff's medical records that are attached to the State and Medical Defendants' motions for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court finds that there are genuine issues of material fact as to whether the State and Medical Defendants knew of Plaintiff's disability and whether the State and Medical Defendants knew that an accommodation was necessary to enable Plaintiff to participate in daily life activities to the same extent as a non-disabled prisoner. Accordingly, the

State and Medical Defendants' motions for summary judgment are denied.  Additionally, State and Medical Defendants' motions to seal are granted.  An appropriate order will be entered.


DATED:  March 29, 2018                                    /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge